ROBERTS v. JOHNS.

1. Where the validity of an order of final discharge granted by a probate judge is a matter at issue, and he has become the master for that county, the Circuit Judge may refer the case to a special master to state the accounts; and as the order of reference conferred only the powers of a special master, it was not vitiated by designating the officer a "special referee."

2. The time when the statute of limitations began to run in favor of the administrator in this case has been already adjudicated in the case of *Roberts* v. *Johns*, 16 *S. C.*, 184.

3. From the time when a trustee should finally account to his *cestuis que trust*, the presumption begins to run in his favor and is complete at the end of twenty years; but upon settlement made or disavowal of trust (which is a claim of full accounting), the statute of limitation bars a reopening of such accounting after the expiration of six years.

4. An act done by an administrator manifesting to the beneficiaries an intention to throw off the trust, gives currency to the statute of limitations in his favor; but the returns made to the probate judge, showing a claim by the administrator to certain assets in his own right, do not charge the beneficiaries with notice of an adverse claim by the administrator, and the statute did not commence to run in his favor until his final discharge.

5. A compromise made by an administrator shortly after the war, sustained, notwithstanding subsequent events show that the whole amount might have been collected; and under the same circumstances he was charged only with the amounts collected on two of the assets of the estate.

6. An administrator allowed credit for the expenses of certain journeys made by him in good faith for the benefit of the estate.

7. An administrator is not entitled to commissions during the years that he neglected to make returns, there having been nothing to prevent it.

8. The costs of this case were properly charged against the estate in the hands of the administrator.

Before KERSHAW, J., Oconee, September, 1883.

In this case, the honorable T. B. Fraser, Circuit Judge, sat in the stead of Mr. Justice McGowan, who had been of counsel.

This was an action commenced September 27, 1875, by the administratrix of a distributee of the estate of James Johns, deceased, against the administrator of said James Johns. The case has been in this court on appeal before. See 16 *S. C.*, 184.

The case was referred to S. P. Dendy, Esq., who made an elaborate report, to which numerous exceptions were taken by both parties, most of which were finally disposed of by the Circuit decree. This decree passed upon these exceptions *seriatim*, and it will be necessary to furnish only the following portions of that decree :

The 5th exception related to the Reeder and Messer note. The defendant must account for what he might, by the exercise of reasonable care and diligence, have recovered on this note. The evidence shows that the note came to the hands of Col. J. J. Norton as his own property, and that he found it to his interest to compromise the same for $550. There is no sufficient reason to believe that the defendant could have realized more for the estate which he represented than Col. Norton did in regard for himself. The prudence, learning, ability, and experience of Col. Norton as a lawyer and man of business sufficiently appear in this case to warrant the conclusion that, to require the defendant to come up to his standard, would be to exact of him even more than will satisfy the demands of the law as to the prudence, care, and diligence required. The defendant's liability, therefore, will be limited on this note to the amount realized by Col. Norton, to wit, $550.

\*       \*       \*       \*       \*       \*       \*

The 7th exception is also overruled. [Because the referee erred in his recommendation that the estate pay the costs of this action.] The spirit of the pursuit of this administrator has been very exacting, and I am impressed with the idea that his conduct has been viewed much more unfavorably than it would have been had this litigation terminated more recently after the reëstablishment

of an orderly civil government in this State and the announcement of judicial decisions declaring void the constitutional provisions in regard to the invalidity of contracts for the purchase of slaves. Men are prone to forget that under the organic law of the State, supported by military force and expounded by courts fully in harmony with the revolutionary ideas then prevailing on this subject, such contracts were utterly and absolutely void and incapable of enforcement until the decision in *Calhoun* v. *Calhoun*, heard at April term, 1870. To impute negligence to an administrator for not seeking, during that period, to enforce contracts of this character, is not only to ignore the history of the State in regard to the institutions, but to view the events of the past by the reflected light of the present day, as was felicitously said by the Chief Justice in support of the decision in *Calhoun* v. *Calhoun*.

I see no fraud in the dealing of the administrator with these securities up to the time of the sale. Even in regard to that, I can find no reason to impute fraud either to him or the court which ordered the sale. It was a mistake, and so far as defendant has profited by the assets thus disposed of, he is properly held to account for them. It was a mistake in him to insist on a right to retain the advantage thus secured to him. It was also a mistake in plaintiff, Mrs. Roberts, with the concurrence of her husband and through his agency, to settle with the administrator on the basis of the sale of the assets, and to give him a release and acquittance from further liabilities. But I do not find in the case anything to justify me in charging the defendant with all the costs of the litigation rendered necessary to ascertain and correct these mistakes.

Both parties appealed upon exceptions, which are sufficiently stated in the opinion of this court.

*Messrs. Keith & Verner*, for plaintiffs.

*Mr. J. J. Norton*, for defendant.

April 22, 1886. The opinion of the court was delivered by Mr. Justice Fraser. A full statement of the facts will be found

in the "Brief" in this case. So much of the facts as will be necessary to explain the ruling of this court will be stated in connection with the consideration of the several questions raised by this appeal. Plaintiffs and defendant have excepted to the decree of the Circuit Judge, and the various questions raised cannot well be considered in the order in which they are presented in the exceptions. They will be taken up in what seems to be a more convenient, if not more logical, order.

I. The first exception is on behalf of the defendant, and is to the order of reference to a special referee, and not to the master for Oconee County. This action was commenced September 27, 1875. A demurrer to the complaint was overruled, with leave to answer; on appeal, the judgment of the Circuit Court was affirmed and the case remanded to the Circuit Court. By an order of the Circuit Court, all the issues of law and fact were referred to S. P. Dendy, as special referee, who made his report, March 11, 1879. This report was overruled by the Circuit Judge and the complaint dismissed. On appeal to the Supreme Court, this judgment of the Circuit Court was reversed, and the case was "remanded to that court for such orders and proceedings as may be necessary to carry into effect" the judgment of the Supreme Court. This judgment of the Supreme Court was filed November 11, 1881.

On June 27, 1882, the Circuit Judge made an order by which it was referred to S. P. Dendy, "as special referee, to state the accounts of the defendant, James A. Johns, as administrator of the estate of James Johns, deceased, in accordance with the principles enunciated in the decree of the Supreme Court in the above stated action." To this order of reference counsel for the defendant excepted. If this exception was in writing, it does not appear in the "Brief." It is stated in the argument of defendant's counsel in the following language: "Because the reference therein ordered is to S. P. Dendy, as special referee, instead of Richard Lewis, Esq., master for said county." This exception was renewed on the first reference held by S. P. Dendy as special referee; it was taken before the Circuit Court on the hearing of the exceptions to the report of S. P. Dendy as special referee; and is again presented to this court, and with much earnestness.

· The exception raises two questions, one of substance and one of mere form. First as to substance. By section 781, General Statutes, which became law May 1, 1882, and before the date of this order of reference, it is enacted that "the office of referee and the practice of referring cases to referees as provided in the code of procedure shall not exist· or be used in the counties of * * * Oconee * * *." Section 782 provides for the appointment of a master for. Oconee and the other counties named in section 781. Section 789 provides for the appointment of a special master in certain cases, in these words: "In case of a vacancy in the office of master during a term of the court, or in case of the disability of the master from interest or any other reason, the presiding judge may appoint a special master in any cause, who shall, as to such cause, be clothed with all the powers of master. The amendment by the act of February 19, 1880, by which cases under reference at that date were excepted from the operation of the master's act then in force, was not reënacted in the general statutes, May 1, 1882.

· The authority of S. P. Dendy as special referee, under the first order, ceased when his report was filed, March 11, 1879, and the special exception of cases under reference no longer existed when the general statutes became of force. The order of reference here called in question must, therefore, be valid under section 789, or then it was made without authority of law. By section 789 it is provided that in case of disability of the master "from interest or any other reason, the presiding judge may appoint a special master," who shall be "clothed with all the powers of the master." The words "any other reason" were intended to give, to the presiding judge large discretionary power, not, however, to be exercised capriciously, as to what reason is sufficient to disqualify a master from acting in any given cause.

It appears from the brief in this case, that Richard Lewis, the master for Oconee County, was at one time judge of probate, and that an order of final discharge granted by him as judge of probate to the defendant in this case, as administrator of this estate, is one of the material matters sought to be investigated in these proceedings, and the validity of which is the very foundation of his defence. It was, therefore, due, not only to the plaintiffs, but

to the master himself, that it should be referred to some one else besides himself to state these accounts. It was, therefore, proper that the presiding judge should have made this reference to some one other than Richard Lewis, master for Oconee County. There is nothing in the conduct of S. P. Dendy, the special referee, in the hearing of the case, in his report on the matters referred, or in any other way, outside of statements of counsel, which shows that he is in any way an improper person to hear the case under an order of reference. So much for the substantive features of this order of reference to S. P. Dendy, and in which, in the absence of any evidence to the contrary, it is fair to assume it was presented to the mind of the Circuit Judge by whom it was made.

The other objection is one of mere form. It is contended, if we apprehend correctly the position taken in arguments, that a reference may be made to a "special master," and not to a "special referee." An examination of the code will show that this officer is called "referee," and that the term "special referee" is nowhere used. If all orders in which the exact name by which this appointee of the court is called in the act is not used are void, then all orders of reference to "special referees," even before the passage of the master's act, were without authority of law. Yet our own reports will show that there have been a large number of such orders of reference, and that none of them have been, for this reason, called in question. It is true that "the office of referee, as prescribed in the code," has been abolished and the office of master substituted in its place, but an examination of the code and of the master's act will show that there is a substantial difference between the "office of master" and the "office of referee," and not a mere change in the name.

In the *Fifty-four First Mortgage Bond Case* (15 *S. C.*, 304) and *Ex Parte Brown* (*Ibid.*, 518), it is held that an order that "the president and directors of the Greenville and Columbia Railroad Company" should continue in the possession and management of the property of the company, and which conferred such powers and imposed such duties as are usually conferred on receivers, created the said president and directors receivers, although they were not so called and named in the order. In

*Ex Parte Brown,* the court says: "Every essential feature of a receivership was created by the order of July 2, 1872, and the office ought to have been so called." It would, on the same principle, be proper to hold that an order of reference would be good if made to a person by name, without styling him either master or referee. To call him special referee in an order conferring the powers and imposing the duties of a special master, is at most a mere erroneous description of the person. *Falsa demonstratio non nocet.* "As soon as there is an adequate and sufficient definition, with convenient certainty of what is intended to pass by the particular instrument, a subsequent erroneous addition will not vitiate it." *Br. Leg. Max.,* *p. 606.

The order of reference complained of in this case conferred on S. P. Dendy, Esq., only certain powers of a special master and none of the prohibited powers of a referee, and it would be sacrificing the substance to the shadow to hold it void because he was there styled special referee and not special master. This exception of defendant must be overruled.

2. The exceptions of the defendant which raise the question of the statute of limitations will next be considered, because they refer to certain items in the account to which the other exceptions do not relate, as well as to some of the items covered by the other exceptions. The 7th and 8th exceptions by the defendant are as follows: "7. Because it appears in the evidence that each and every item in the account accrued against defendant prior to the 1st day of March, 1870, although the statute began to run on the 7th day of March, 1870; yet the statute of force prior to the 1st March, 1870, governs and bars each and every item of said account before the commencement of this action. 8. Because the claim to the note of E. P., L. H., and D. D. Verner, as a part of James Johns' estate, is barred by the statute of limitations, the defendant having claimed it as his own property since 17th December, 1869."

The question raised by these exceptions is not whether the limitation of five or six years is applicable in this case, but when did the statute commence to run. It might be sufficient to say that this matter has already been adjudicated by this court in this case. See *Roberts* v. *Johns,* 16 *S. C.,* 184. In that case

this court uses the following language: "The statute of limitations did not begin to run against the plaintiff's right to an accounting until the administrator had done some positive act manifesting a clear intention to terminate his trust. This was never done till March 7, 1870, when he obtained from the Probate Court his final discharge, and within the statutory period from that date this action was begun."

It is insisted, however, that the statute may still be pleaded to each item in the administrator's account. In exception 7 it is said that each and every item in the account accrued against defendant prior to the first day of March, 1870. And in exception 8 it is claimed that defendant should not be charged with the Verner note, because he "claimed it as his own property since December 17, 1869." Assuming that the question is an open one, is there anything in the dealings of the administrator with this estate to give currency to the statute at the periods stated in these exceptions? In the consideration of claims against trustees, where lapse of time is the ground of defence, it is important to bear in mind the distinction between the bar of the statute and the presumption of payment from lapse of time. Whenever the period arrives at which, according to the terms of his trust, the trustee is required to make his final account, and there is no disability on the part of the beneficiary of the trust, the presumption commences to run against the latter and in favor of the former. At the end of twenty years, unless there is something to arrest or suspend the presumption, it becomes a complete protection against any further demand on him as trustee. Any failure to account for or pay over to the beneficiary according to the terms of the trust is a cause of action, and the right of action accrues on such failure, and it is not barred until the presumption of payment has run its full course of twenty years.

The defence of the statute of limitations stands on a different footing. When a trustee has made a settlement by accounting and paying over, the liability under the original trust is *prima facie* at least at an end, and if it is proposed to open the settlement, it is necessary to allege and show errors in the settlement. It is this right to open a settlement which is barred by the statute of limitations which runs from the date of the settle-

ment, or from the date of the discovery of the fraud, or other circumstance which invalidates it. When there has been no actual settlement, but "some positive act manifesting a clear intention to terminate his trust" has been done by the trustee, the statute begins to run from this act. Such an act amounts. to a claim that the trustee has fully accounted, and the acquiescence in the claim for the statutory period is a bar to any reopening of what has been so long acquiesced in. It must be an act manifesting the intention to throw off the trust; manifesting it not to strangers, but to the beneficiary or *cestui que trust.*

The very liberal rule has been adopted by our courts, "that an act done in a public office, open for the information of parties, must be taken notice of by them." See *Moore* v. *Porcher, Bail. Eq.,* 197 ; *Glover* v. *Lott,* 1 *Strob. Eq.,* 79 ; *Coleman* v. *Davis,* 2 *Id.,* 341 ; *Payne* v. *Harris,* 3 *Id.,* 43 ; *Long* v. *Cason,* 4 *Rich.· Eq.,* 63 ; *Motes* v. *Madden,* 14 *S. C.,* 492. In all of these cases the act by which the trustee was allowed to give currency to the statute was either actually known, or presumed to have been known, to the beneficiary. In the case before the court there is nothing to show that Mrs. Roberts either had notice, or was in any way affected with notice, that the defendant claimed that he was not liable to account to her for any of the items to which the statute is here pleaded, until the final discharge by the judge of probate, March 7, 1870. She was then bound to take notice of this claim, thus throwing off the trust, and has commenced her action within the statutory period from that date. These exceptions are, therefore, overruled.

3. The 1st exception on the part of the plaintiff, and the 5th exception on the part of the defendant, relate to the note of P. J. Miller. If the compromise of this note for $205, at less than its nominal value, was a part of a scheme by which it was to be improperly converted by the defendant to his own use, he ought to be charged with its full value. If, however, at the time of the compromise he did, as he seems to have done, make such a compromise as a prudent man may well have done, ·he ought to be charged only with what he received on it, even if subsequent events show that he might have collected the whole amount if he had chosen to take all the chances of those uncertain times. The

interest on $200, the amount of the Blair note, which was a part of the compromise, should run only from the day at which it became an interest bearing demand, May 1, 1870.   To this extent the judgment of the Circuit Court must be modified in reference to this claim so as to make the interest on the Blair note run from May 1, 1870.

4. The 2d exception of plaintiff, as also the 2d exception of defendant, refers to the Mary Dalton note.   This note was, with others, sold by the defendant December 17, 1869, to Sloan Dickson for a very small sum.   This sale has been adjudged to be void, and defendant must account for the note in the same way as if the sale was never made.   It is for the defendant to show the circumstances, if there are any, which may relieve him of his liability to account for this note in full.   These appear in the testimony taken before the special referee.   It is possible that the whole may have been collected.   It seems, however, from the testimony, that the estate of Mary Dalton was small, and that some of her creditors received only a small percentage of their claims. Under all the circumstances of the times and the estate, it would be hard measure to hold this defendant liable for more than was received on this note, but for this amount, $413.41, he should account; and this court concurs with the Circuit Judge as to the amount with which the defendant is chargeable on this note.

5. The 3d exception of the plaintiff, which is also the 3d exception of the defendant, refers to the Reeder & Messer note. For the reasons assigned in the Circuit decree, this court concurs with the Circuit Judge as to the amount for which the defendant is chargeable on this note.

6. The 4th exception of the plaintiff refers to certain allowances made to defendant for services and expenses of trips to Georgia and Texas for the benefit of the estate.   Though it does not appear that much, if any, good resulted from them, these services seem to have been rendered in good faith, and the amounts allowed seem reasonable, and this court concurs with the Circuit Judge in reference to them.

7. The 4th exception of defendant is, that the plaintiff has been allowed one-half, instead of one-third, of the net balance of the estate.   An examination of the award made by the arbitra-

tors appointed by the defendant, and S. H. Johns, one of the distributees of the estate, shows that the award-did not contemplate a final settlement of that share as the matter to be effected by it. It involved some matters of a purely private nature, and only settled some of the principles upon which a final settlement of that share was to be made between these parties. This exception is therefore well taken. The proper mode of stating the account is to charge the defendant with all sums which either for negro debts, or otherwise, were due to the estate by S. H. Johns, or the defendant himself, and then give him credit for all valid demands held by S. H. Johns against the estate. When the balance is struck, to show the present value of the estate, the advancements made to all the distributees must be added. The sum thus made up is the amount for distribution. One-third of this, less payments and advances and commissions for paying out to the distributees respectively, is the amount now due and payable to them severally. This exception is, therefore, sustained, and the account must be restated according to these views.

8. The 6th exception of the defendant is, that certain commissions were not allowed by the Circuit Judge for years in which no returns were made. If there is anything in the distinction urged on the court between neglect to make returns and failure to make returns, there is nothing in the testimony in this case to show that the defendant is entitled to the benefit of it. There was nothing so far as appears to prevent him from making returns, and he did not make them, This is neglect. This exception is therefore overruled.

The exception as to costs is overruled for the reasons assigned in the Circuit decree.

It is therefore ordered and adjudged, that the judgment of the Circuit Court be affirmed, except as herein modified, and that the case be remanded to the Circuit Court for such further proceedings as may be necessary to carry out the judgment of the Circuit Court as herein modified.