14697

NESBITT v. CLARK

(197 S. E., 382)

*Mr. Jesse W. Boyd,* for appellant,

*Mr. D. W. Galloway,* for respondent,

May 31, 1938.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

Under the will of J. J. Nesbitt, who died on January 2, 1935, all of his property was devised to Mary S. Nesbitt, the respondent herein, for the benefit of herself and their daughter, Katherine Nesbitt. Personal property of the value of $20,000.00 came into possession of respondent, but the Liberty Bond hereinafter referred to was no part thereof. Mrs. Nesbitt qualified as executrix, and made her final settlement in April, 1936, and was discharged as such executrix. No claim against the estate of J. J. Nesbitt was filed by Agnes Nesbitt Clark, the assignor of the claim set up by the appellant, the assignee of Agnes Nesbitt Clark.

On February 6, 1937, the respondent, Mary S. Nesbitt, commenced an action against appellant, N. T. Clark, the husband of Agnes Nesbitt Clark, on his certain promissory note dated November 30, 1934, whereby he promised to pay to the order of J. J. Nesbitt, the sum of $1,000.00 on or before two years after date, with interest from date until paid at 7 per cent. per annum, payable annually, and also agreed to pay in case of suit or collection by an attorney 10 per cent. attorney's fee for collection. The following credits were allowed: $70.00 as interest paid 11/30/35; $13.50 as principal, same date; $70.00 as interest 11/30/36.

The answer admitted the allegations of the complaint, and that J. J. Nesbitt devised all of his personal property to respondent. For further answer and for counterclaim:

"(c) At the time of his death, the said J. J. Nesbitt was in possession of a United States Government Bond of $500-.00 denomination and interest coupons thereon of the value of $1,000.00, the property of Agnes N. Clark, and in the

possession of said J. J. Nesbitt as fiduciary for Agnes N. Clark, his *cestui que* trust.

"(d) The said United States Government Bond or its equivalent in other securities acquired by J. J. Nesbitt through a change of investment for the benefit of Agnes N. Clark, his *cestui que* trust, was a part of the personal estate of the said J. J. Nesbitt, which came into hands of the plaintiff under provision of the will of J. J. Nesbitt.

"(c) On the 30th day of January, 1937, the said bond and coupons together with each and every right and interest incident thereto, were assigned to this defendant, and he is the owner of the same.

"(f) The United States Government bond described is not listed by name as a part of the estate of J. J. Nesbitt, and this defendant as the owner of the same is entitled to its value in money and judgment in an amount equal to its value.

"(g) The government bond referred to was purchased by J. J. Nesbitt for the account of Agnes C. Nesbitt on November 20th, 1918, and paid for with the money of Agnes C. Nesbitt by check against her deposit account made by the said J. J. Nesbitt as her agent, she being at that time a minor, which bonds have been in the possession of said J. J. Nesbitt ever since, or should have been."

Respondent first demurred to the counterclaim, and, upon the demurrer being overruled, served a reply, which was a general denial.

The trial Judge nonsuited appellant as to his counterclaim, and found for respondent the amount due on the note, and attorneys' fee; the order of nonsuit being bottomed upon the six-year statute of limitations, Code 1932, § 388.

The appeal raises two questions: When did the statute of limitations begin to run, and should it have been submitted to the jury to determine this time?

J. J. Nesbitt and Agnes Nesbitt Clark were brother and sister, and the children of S. N. Nesbitt. The latter named died in May, 1911, leaving by will his property to his widow

for life, and remainder to his children. Mrs. S. N. Nesbitt died in June, 1936. The financial and business affairs of the estate of S. N. Nesbitt were looked after by J. J. Nesbitt as long as he lived.

Mrs. Clark testified that, at the direction of her mother, J. J. Nesbitt looked after her business interests while she was a minor. On November 20, 1918, J. J. Nesbitt signed the name of "Agnes C. Nesbitt" to a check on Southern Trust Company of Spartanburg, S. C., payable to American National Bank in the sum of $500.00, and on the margin of this check, which was paid, appears: "Liberty Bond Miss Agnes C. Nesbitt." This is the Liberty Bond on which the counterclaim is based. Miss Nesbitt became Mrs. Clark later in 1918, at about the time she reached the age of 21 years. About one year thereafter, in 1919, J. J. Nesbitt ceased to handle her business, and turned over to her her bank book and paid checks. The testimony is silent as to the source of the money to the credit of Miss Nesbitt (later Mrs. Clark) in the Southern Trust Company, and it does not appear that when J. J. Nesbitt was accounting to Mrs. Clark any mention was made of this Liberty Bond. According to the testimony of Mrs. Clark and her husband, the appellant, in 1933, fourteen years after J. J. Nesbitt had turned over to her such business matters as he had handled for her as her *quasi*-trustee, she asked him for the Liberty Bond, but we know not his explanation of the disposition of the bond. The next claim on the part of either Mr. or Mrs. Clark to this bond or its value was when appellant was sued on his note to J. J. Nesbitt, and set up a counterclaim on account thereof, as assignee.

The fact that J. J. Nesbitt handled the property left by his father, S. N. Nesbitt, to his mother for life, and in remainder to their children (J. J. Nesbitt, Agnes Nesbitt Clark and another child), cannot be construed as an inference that his trusteeship for Agnes Nesbitt Clark continued after 1919. It will be presumed that he was han-

dling the S. N. Nesbitt property for the benefit of the life tenant, whom he predeceased.

In 1831, in the case of *Philip Moore v. Mary J. Porcher, Adm'x of James Porcher, deceased,* Bailey, Eq., 195, this Court held that "when a trustee does an act, which purports to be an execution of his trust, he is thenceforth divested of his fiduciary character, and will be protected against an account by the statute of limitations." In the opinion by Chancellor Harper, adopted by the Court of Appeals, he stated: "Without any authority to the purpose, I am of opinion, from the reason and analogy of the law, that when a trustee does an act, which purports to be a final execution of his trust, the statute will begin to run from that time, so as to bar an account." "The possession of a trustee is not adverse; it is the possession of the *cestui que* trust, and the statute does not apply: but when he does an act purporting to be an execution of the trust, he shakes off the character of trustee, and thenceforward stands in an adverse relation. If the *cestui que* trust supposes that the trust has not been fully and faithfully performed, he is put upon the assertion of his right."

The principle announced in the *Moore-Porcher case* was followed in *Glover v. Lott,* 1 Strob. Eq., 79; *Coleman v. Davis,* 2 Strob. Eq., 334, 341; *Long v. Cason,* 4 Rich. Eq., 60; *Roberts v. Lesly,* 8 Rich. Eq., 35; *Beard v. Stanton,* 15 S. C., 164, 170.

In *Roberts v. Johns,* 24 S. C., 580, 588, the Court stated:

"* * * When there has been no actual settlement, but 'some positive act manifesting a clear intention to terminate his trust' has been done by the trustee, the statute begins to run from this act. Such an act amounts to a claim that the trustee has fully accounted, and the acquiescence in the claim for the statutory period is a bar to any reopening of what has been so long acquiesced in. It must be an act manifesting the intention to throw off the trust; mani-

festing it not to strangers, but to the beneficiary or *cestui que* trust."

We think the only reasonable inference to be drawn from the testimony of appellant and his witness, his wife, is that in 1919, when J. J. Nesbitt turned over to Mrs. Clark her business affairs, it was a "positive act manifesting a clear intention to terminate his trust," and that the trial Judge was correct in holding that the statute began to run from that date.

There was no claim that there was unaccounted for the $500.00 Liberty Bond from 1919 until 1933, when, according to the testimony of appellant and his wife, it was demanded, and it was not then delivered. J. J. Nesbitt lived until January 2, 1935, and no further demand was made upon him for the bond or its value. In 1934, appellant borrowed from J. J. Nesbitt one thousand dollars (evidenced by the note sued upon), and no mention was made of the Liberty Bond. The estate of J. J. Nesbitt was settled and no claim was filed by Mrs. Clark on account of this bond.

The facts of this case fully justify a statute of limitations against asserting a right of action; and also justify the established law of this State that the statute begins to run when "some positive act manifesting a clear intention to terminate his trust" has been done by the trustee, and the *cestui que* trust has knowledge of this act.

The exceptions are overruled, and the judgment appealed from affirmed.

Mr. Chief Justice Stabler and Messrs. Justices Bonham and Fishburne and Mr. Acting Associate Justice Wm. H. Grimball concur.

Mr. Justice Carter did not participate on account of illness.