## ANDERSON v. BOWERS.

### No. 5806.

United States Court of Appeals
Fourth Circuit.

Nov. 8, 1948.

John D. Nock, of Cheraw, S. C., for appellant.

Helen Goodner, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., George A. Stinson and Ellis N. Slack, Sp. Asst. to Atty. Gen. and Ben Scott Whaley, U. S. Atty. and Louis M. Shimel, Asst. U. S. Atty., both of Charleston, S. C., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought to recover an alleged overpayment of federal income taxes for the year 1941 in the sum of $10,072.74. Maggie F. Anderson, the taxpayer, was executrix and residuary legatee of the will of her husband which disposed of an estate in excess of $500,000. On February 29, 1941, she filed her final administration account in the Probate Court for Chesterfield County, South Carolina, in which she showed the distribution of the estate, and craved an allowance of $25,106.-99 for executrix' commissions. On the same day the account was approved and she was discharged as executrix. She included these commissions in the sum total of her income in her income tax return for 1941; and in 1942, paid the tax on the net income shown by the return. She now claims that the commissions charged by her were excessive to the extent of $18,498.49 and that her income tax for the tax year was thereby overstated in the sum for which the suit is brought.

The amount of the commissions was first questioned in 1943 when the federal estate tax return, filed by the executrix on February 12, 1941, was examined and the Commissioner of Internal Revenue determined a deficiency of $60,002.25 which was based in part upon a disallowance of the commissions as a deduction to the extent of $18,498.49, and in part through the inclusion in the estate of the proceeds of certain life insurance policies and certain transfers of property made in contemplation of death. The executrix and the transferees did not challenge the determination of this deficiency, but paid the additional tax. She now claims that since the Commissioner determined that the commissions were excessive, and the excess was added to the estate for estate tax purposes, it must follow that her reported personal income for 1941 was excessive and so much of the income tax as was based on the excess should be returned.

In order to pass upon the validity of the claim, it is necessary to decide whether the taxpayer actually received or had the power to receive the commissions in the year 1941. The taxpayer herself was inexperienced in business matters, but was guided therein by her son and her attorney and a tax consultant. On February 4, 1941, while she was absent from home, she received a check dated February 28, 1941, for $25,106.99 for the commissions payable to herself, with instructions from her advisers to sign it as executrix and return it to her lawyer. She did so. The check was not cashed but was held by her son, together with other checks payable to certain beneficiaries of the estate to wait the action of the Government upon the estate tax return, since it was feared that a deficiency in the estate tax would be determined by the Commissioner. After this contingency actually occurred in 1943, the checks above mentioned, including the one for the commissions, were endorsed by the respective payees and deposited on March 15, 1943 in a special account, and a check was drawn on this account in favor of the Collector of Internal Revenue for the amount of the estate tax deficiency. It thus appears that the check for the commissions, drawn by the executrix and payable to herself personally, was held until March 15, 1943, when, having been endorsed by her, it was deposited in the tax account for collection.

Under these circumstances the court, correctly in our opinion, entered judgment for the United States. It is well established by decisions of the courts and by Treasury Regulations that income which is set apart for a taxpayer and can be drawn upon by him at any time is subject to tax for the year in which it is set apart, although not actually reduced to possession in that year. North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; Penn v. Robertson, 4 Cir., 115 F.2d 167, 173; Lavery v. Commissioner, 7 Cir., 158 F.2d 859; Hedrick v. Commissioner, 2 Cir., 154 F.2d 90, certiorari denied, 329 U.S. 719, 67 S.Ct. 53, 91 L.Ed. 623; Schoenheit v. Lucas, 4 Cir., 44 F.2d 476; Treasury Regulations 103, § 19.42-2. There can be no question that the taxpayer as executrix had full control of the monies of the estate on deposit in bank to her credit and that

she had like control of the check for commissions to her personal order, with full power to cash it whenever she saw fit. It is true that she complied with the advice given her and did not cash the check in 1941, but this action was taken of her own free will; indeed she had full power to draw another check at any time for her commissions if the check in the possession of her son was not available. The arrangement by which she and the other transferees of the estate forebore to cash the checks payable to them was devised voluntarily for their own convenience since they were all liable as transferees for any deficiency in the estate tax that might be determined.

 The taxpayer says, however, that she was not entitled as a matter of law to the excess commissions charged in her account as executrix, since they were held to be improper by the Commissioner in passing upon the estate tax return; and therefore she contends that she should not be charged with them as part of her personal income in 1941. The law of South Carolina, Section 9017, Code of 1942, provides that an executrix is entitled to 2½ per cent. of the monies received and 2½ per cent. of the money disbursed in credits, debts, legacies or otherwise during the course of her management or administration. Apparently the commissions charged by the executrix in her account were based upon the total amount of the estate received and disbursed, and were not calculated upon the cash sums received and disbursed, as was done in the determination of the Commissioner. It seems to be conceded by the parties to the pending case that the method pursued by the Commissioner was correct. Even so, it does not follow that the approval of the account of the executrix by the Probate Court and the discharge of the executrix were void and of no effect. Even if the action of the court was erroneous, it gave the taxpayer the right to accept the check for commissions and to reduce the proceeds thereof to possession in the absence of objection from an interested party. Section 230 of the South Carolina Code provides that any person interested in any final order of a probate court may appeal therefrom to the

Circuit Court of the County at the session next after the appeal, and that the grounds of appeal shall be filed in the Probate Court and served upon the adverse party in fifteen days after the notice of the decision. No appeal was taken in this case and the approval of the administration account seemingly became final. The matter was one undoubtedly within the jurisdiction of the Probate Court and we find nothing in the statutes or decisions of South Carolina which runs counter to the general rule that in the United States the tribunals entrusted with jurisdiction over estates of deceased persons are clothed with the powers and dignities of courts and their judgments are as binding and conclusive as those of other courts, and cannot be opened or revised without statutory authority except in equity for mistake or fraud or by appeal. 3 Woerner, American Law of Administration, §§ 507, 570. In this case the only person affected by the allowance of commissions would seem to be the taxpayer herself since she was the residuary legatee, and therefore an interested party within the terms of the statute. Witte Bros. v. Clarke, 17 S.C. 313; but this fact serves only to emphasize her complete control of the situation. In our view the action of the probate court, although erroneous, was valid until reversed.

 We express this view with some diffidence since the matter was merely touched upon and was not exhaustively treated either in the briefs or in oral argument of the parties. But however this may be, our decision must be the same, for the case is clearly governed by the principle announced in North American Oil Consolidated v. Burnet, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197, where the court said: "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent."

We applied this rule in Penn v. Robertson, 4 Cir., 115 F.2d 167, where it was held that a taxpayer must include as taxable income monies received or credited to him

in the tax year under a stock purchase plan although the plan was invalid under the relevant state statutes and was rescinded in the following year. See also Barker v. Magruder, 68 App.D.C. 211, 95 F.2d 122; but cf. Commissioner of Internal Revenue v. Turney, 5 Cir., 82 F.2d 661.

From these decisions it is clear that when income has been received by the taxpayer or credited to him under a claim of right, it must be accounted for in the year in which it was received or could have been received by him; and if it is shown in a subsequent year that the payment was wrongfully made and the taxpayer is required to make restitution, his remedy is not to sue the Collector to recover the excess tax mistakenly paid but to claim the repayment as a deduction from income in a year in which it is made. This procedure is required because income taxes are imposed and must be accounted for on a yearly basis under the decision of Burnet v. Sanford & Brooks Co., 282 U.S. 359, 365, 51 S.Ct. 150, 75 L.Ed. 383.

Accordingly, the taxpayer's claim must be dismissed, although the result is that the sum total of taxes collected by the United States in the transactions described exceeds the sum that would have been payable if the taxpayer had not collected more commissions than she was entitled to charge, and although the loss falls only upon her. This result, however, was caused by the taxpayer herself and not by an illegal action by the United States; and the loss falls only upon her because she occupies the dual role of executrix and residuary legatee. Her mistake in the first place was to charge excess commissions; and in the second place, when she discovered her mistake, she made no attempt to correct it. It seems clear from the South Carolina decisions that the validity of a final account and of a final discharge of an executor of an estate may be inquired into in an independent action in a circuit court. Roberts v. Johns, 24 S.C. 580; McDow v. Brown, 2 S.C. 95; Nesbitt v. Clark, 187 S.C. 365, 197 S.E. 382. If such an action had been brought by the taxpayer in her capacity as residuary legatee, and had resulted in a judgment requiring the repayment of the excess commissions to the estate, and such repayment had been made, the taxpayer would have had the opportunity to claim a deduction from her taxable income for the year in which the repayment was made; but even under these circumstances, she would not have been entitled to recover any part of the income tax paid by her for the year 1941.

The judgment of the District Court is affirmed.