LLOYD PATTERSON and CHARLENE PATTERSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Patterson v. Commissioner
Docket No. 697-72.
United States Tax Court
T.C. Memo 1973-39; 1973 Tax Ct. Memo LEXIS 245; 32 T.C.M. (CCH) 181; T.C.M. (RIA) 73039; February 15, 1973, Filed Charles H. Creason, for the petitioners. David R. Brennan, W. Durrell Nielsen and C. Garold Sims, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $5,167.14 in petitioners' Federal income tax for the year 1969. 2 Concessions having been made by the parties, the only issue remaining for our decision is whether the petitioners constructively received in 1969 an $18,000 payment actually received from J. R. Simplot Company on January 5, 1970. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Lloyd and Charlene Patterson (hereinafter called petitioners) are husband and wife who resided in Paul, Idaho, when they filed their petition in this proceeding. Their joint Federal income *246 tax return for the year 1969 was filed with the Western Service Center at Ogden, Utah. During 1969 Lloyd Patterson was a farmer. On June 17, 1969, he entered into a potato growing agreement and a modification agreement with J. R. Simplot Company. In the fall of 1969 the potato crop, which was governed by the terms of the potato growing agreement, was harvested and stored in petitioners' storage facilities. Petitioners received moneys under the provisions of the potato growing agreement as follows: Date
Amount
11-7-69
$ 1,500.00
1-5-70
18,000.00
3-6-70
4,867.94
Total
$24,367.94 3 The petitioners reported the amounts received as income in the year of receipt. The amounts paid include payments under section III, 2(i), providing payment for the storage of potatoes in petitioners' facilities. The potatoes harvested under the potato growing agreement were delivered to J. R. Simplot Company on the following dates: Date
Pounds Delivered
Price
2-19-70
3,061.0
$ 6,105.28
2-20-70
6,756.2
12,821.97
2-21-70
2,917.4
5,440.69
Total
12,734.6
$24,367.94
On such dates, the potatoes were inspected by the Federal-State *247 inspection service pursuant to section IV of the potato growing agreement. On January 3, 1970, Rex Rasmussen, field manager of J. R. Simplot Company inspected and measured the potatoes held in storage by petitioners. The company approved the payment of $18,000 to petitioner Lloyd Patterson on that date. If petitioner had requested Rasmussen to make the inspection and estimate in late 1969, Rasmussen would have done so, and the payment would have been made by the company in 1969. On January 5, 1970, the day petitioner Lloyd Patterson received the $18,000 payment from J. R. Simplot Company, he insured the potatoes through SAFECO Insurance Company. The insurance policy contained a loss payable clause in favor of J. R. Simplot Company. 4 The term "delivered" means the time when the potatoes were physically removed from petitioners' storage facility to the facilities of J. R. Simplot Company. J. R. Simplot Company agreed to compensate petitioners for the use of their land and for services in growing the potato crop. It had title to and ownership of the potato crop. It could enter on the land and take care, control and management of the potato crop if the petitioners did *248 not use proper care. J. R. Simplot Company filed an appropriate security agreement to perfect its interest in the potato crop. It inspected the crop as it was growing in the fields of the petitioners. Petitioners had the risk of loss for damage to the potato crop until insured. Petitioners were entitled to additional compensation for storing the potatoes from the date of harvest until the date of delivery to J. R. Simplot Company. After deducting the cost of services, seed, materials and cash advances made by J. R. Simplot Company, the petitioners were entitled to one-half of the proceeds of the potato crop at the time of harvest, one-fourth at petitioners' option on December 31, 1969, or January 5, 1970, and the balance by March 15, 1970, or when the potatoes were delivered, whichever was later. Petitioners' potato crop was harvested in late September or early October of 1969. 5 J. R. Simplot was capable of making payments to petitioners under their agreement in December 1969. All petitioners needed to do to receive payment was to request inspection and payment in December 1969. Petitioners were entitled to three-fourths of the potato crop proceeds on or *249 by December 31, 1969. In his notice of deficiency dated November 30, 1971, the respondent determined that the petitioners constructively received gross income of $18,000 in the year 1969. ULTIMATE FINDINGS The $18,000 payment was available to petitioners without any substantial restriction on or by December 31, 1969. They alone controlled the date of the $18,000 payment and it was through their own volition that the payment was deferred from December 31, 1969, to January 5, 1970. Therefore, the amount of $18,000 was constructively received by petitioners in the taxable year 1969. OPINION It is settled law that income which is subject to a taxpayer's unfettered command and which he is free to enjoy at his own option is taxed to him as his income whether he sees fit to enjoy it or not. See Corliss v. Bowers, 281 U.S. 376 (1930); Loose v. United States, 74 F.2d 147, 150 (C.A. 8, 1934); and Ralph Romine, 25 T.C. 859 (1956). The doctrine of constructive receipt is applied where a cash basis 6 taxpayer is presently entitled to money which *250 is made immediately available to him and his failure to receive it in cash is due entirely to his own volition. The test of taxability is not the actual receipt of income but the present right to receive it. Irish v. Commissioner, 129 F.2d 468 (C.A. 3, 1942), affirming 43 B.T.A. 864 (1941). In other words, "a taxpayer may not deliberately turn his back upon income and thus select the year for which he will report it." Hamilton National Bank of Chattanooga, Administrator, 29 B.T.A. 63, 67 (1933); Cecil Q. Adams, 20 B.T.A. 243 (1930), affirmed 54 F.2d 228 (C.A. 1, 1931). Section 1.451-2, Income Tax Regs., provides that income not actually reduced to possession is constructively received and includable in gross income when it is credited, set apart or otherwise made available to the taxpayer. Income available and subject to the demand of the taxpayer is treated as received by him at the time it becomes available regardless of the time of actual receipt. Ralph Romine, supra. *251 The potato growing agreement executed by petitioners and the J. R. Simplot Company provided in section III that Simplot would compensate petitioners for the use of their land and for their services for growing a potato crop. The final amount was to be determined after the potatoes were harvested and graded. Title to and ownership of the potato crop was in Simplot, and Simplot could 7 enter on the land and take active care, control and management of the crop if the petitioners did not use proper care. Simplot further filed an appropriate security agreement to perfect its interest in the crop. However, the risk of loss for damage to the potatoes was on petitioners until a significant advance was made by Simplot, at which time the potatoes were then insured with a loss payable clause in favor of Simplot. Under section VII of the modification agreement the petitioners were entitled to, after deducting the cost of services, seed, materials and cash advances made by Simplot, one-half of the proceeds of the potato crop at time of harvest, one-fourth at petitioners' option on December 31, 1969, or January 5, 1970, and the balance by March 15, 1970, or when the potatoes were delivered. *252 Thus, petitioners were entitled to three-fourths of the proceeds on or by December 31, 1969. As we see it, there was no substantial restriction or limitation on the receipt of the $18,000 in late 1969.Under the agreement with Simplot the petitioners needed only to request payment. Mr. Rasmussen, an employee of Simplot, would then inspect the potatoes in storage and estimate payment. He had over 23 years experience and he determined that the potatoes were in excellent condition. In addition, when the payment was made, the potatoes were insured with a loss payable clause in favor or Simplot. The Simplot employee 8 would estimate the payment so that it would not exceed three-fourths of the total proceeds. Hence the risk of loss to petitioners was minimal, if any, and the only restriction on the receipt of the $18,000 was that they request it. It is true that a possibility existed that, if the potatoes went bad before delivery to Simplot, petitioners would have to reimburse it for part of the advance. However, the law is clear that income must be determined as of the close of the *253 taxable year without regard to subsequent events. Penn v. Robertson, 115 F.2d 167 (C.A. 4, 1940). Income for a cash basis taxpayer is accountable in the year of receipt or in the year it could have been received, and if the taxpayer is required to restore it in a subsequent year, he is entitled to claim a deduction for the repayment in the year the repayment is made. North American Oil Consolidated v. Burnet, 286 U.S. 417 (1932); Anderson v. Bowers, 170 F.2d 676 (C.A. 4, 1948). The main thrust of petitioners' position is that they did not have an unqualified right to receive income in 1969 in the form of advancements. They rely principally on two cases, namely, Wilfred Weathers, 12 T.C.M. 314 (1953), and Lloyd S. Elder, 9 T.C.M. 59 (1950). We think both of these are distinguishable on their facts. In each the constructive receipt doctrine was held to be inappropriate because one of the prongs of proof necessary to sustain its application was absent. For the raiments of this doctrine to fit, two 9 determinations, *254 both factual, are necessary. First, there must be an obligation to pay an amount inuring in favor of the taxpayer. Second, the taxpayer must have a concomitant right to demand payment. Richards' Estate v. Commissioner, 150 F.2d 837 (C.A. 2, 1945). The Weathers case misses the gravamen of respondent's position in the instant case. There the Court was confronted with a different issue. It was not concerned, as it is here, with whether an advance, capable of being requested by the taxpayer, constituted the constructive receipt of income. Instead, it was faced with determining the efficacy of an oral agreement which modified the terms of an erstwhile contract. Having once decided that the oral contract was binding, we concluded that the taxpayers' buyer was not obligated to pay and the taxpayers did not have a right to demand payment in the year in question.Therefore, the constructive receipt doctrine was held to be inapplicable. Furthermore, unlike the circumstances in Weathers, the petitioners' contract in this case did not specify that payment was to be made in a subsequent year. On the contrary, the petitioners had an absolute right to one-half of the amount *255 of the sale at the time of harvest and one-fourth on either December 31, 1969, or January 5, 1970 - the date of demand of the latter payment being reserved to, and entirely within the volitional control of the petitioners. In Weathers the oral modification created an obligation in the buyer and a right in the seller in a subsequent 10 tax year; here, by contrast, the contract provided that J. R. Simplot Company, the buyer, was obligated to pay, and the petitioners had a right to demand payment of three-fourths of the selling price in the year 1969. In the Elder case neither requirement of the constructive receipt doctrine was satisfied - (1) the taxpayer's employer denied any obligation to pay the taxpayer until a final settlement was reached and (2) the speculative nature of the taxpayer's commissions made any settlement impossible. The taxpayer had no rightful demand to any commissions in advance. Here there was a specific provision in the modification agreement which guaranteed a partial settlement in 1969. Moreover, Rex Rasmussen's testimony supports the conclusion that the petitioners had a right, exercisable under the contract, which insured payment in 1969 of three-fourths *256 of a determinable amount. All that was required was the petitioners' communication of a request for payment which triggered an inspection and estimate and then a payment. The contract unequivocally provided for these settlements and, if the potatoes were satisfactory, which they in fact were, Simplot was under an obligation to pay the petitioners pursuant to its terms. Accordingly, we hold that the petitioners constructively received the $18,000 payment in 1969 and they must include that amount in their gross income for that year. Decision will be entered under Rule 50.