MORTIMER L. SCHULTZ AND ROSANNA SCHULTZ, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1830-71—1834-71. Filed January 22, 1973.

Mortimer L. Schultz, pro se.
*William M. Gross*, for the respondent.

WITHEY, *Judge:* In these consolidated cases the respondent determined the following Federal income tax deficiencies and additions to tax under section 6651(a) of the Internal Revenue Code of 1954 for the taxable year 1962 as follows:

[1] Cases of the following petitioners are consolidated herewith: Rosanna Schultz, Custodian for Roger Schultz, docket No. 1831-72; Rosanna Schultz, Custodian for Patricia Schultz, docket No. 1832-71; Rosanna Schultz, Custodian for Karen Schultz, docket No. 1833-71; and Rosanna Schultz, Custodian For Michael Schultz, docket No. 1834-71.

| Petitioner | Docket No. | Deficiency | Addition to tax sec. 6651(a) |
|---|---|---|---|
| Mortimer Schultz and Rosanna Schultz | 1830–71 | $63,039.28 | |
| Roger Schultz | 1831–71 | 10,287.67 | $2,571.92 |
| Patricia Schultz | 1832–71 | 10,287.67 | 2,571.92 |
| Karen Schultz | 1833–71 | 10,287.67 | 2,571.92 |
| Michael Schultz | 1834–71 | 10,287.67 | 2,571.92 |

The issues presented for our consideration in docket No. 1830–71 are:

(1) Whether a capital gain of $213,000 arising from a sale of stock consummated in the taxable year 1962 is taxable in that year to the petitioners, irrespective of the fact that in a subsequent taxable year the sale was challenged and the husband-petitioner was required to make some restitution of the sales proceeds.

(2) Whether two checks received on May 3, 1962, and May 7, 1962, in the respective amounts of $5,000 and $13,575 represent ordinary income not reported in petitioners' 1962 return.

The parties have stipulated that the transaction giving rise to the capital gain issue was intended as a valid sale. Therefore, respondent concedes the alternative issue raised in the statutory notice of deficiency which determined that in the event the Court determines that there was no substance to the sale of stock, petitioners realized ordinary income from forgiveness of indebtedness.

*Roger Schultz, docket No. 1831–71; Patricia Schultz, docket No. 1832–71; Karen Schultz, docket No. 1833–71; Michael Schultz, docket No. 1834–71*

These dockets represent protective positions taken by respondent regarding the sale of the above-mentioned stock being taxed to petitioners in docket No. 1830–71. The parties have stipulated that petitioners in docket Nos. 1831–71, 1832–71, 1833–71, and 1834–71 were nominees of petitioner-husband who was the beneficial owner of the stock. By reason of such stipulation, respondent concedes that no deficiencies in tax or additions to tax are due from the petitioners in docket Nos. 1831–71, 1832–71, 1833–71, and 1834–71, provided we find the gain taxable to petitioners in docket No. 1830–71.

### FINDINGS OF FACT

The petitioners in docket No. 1830–71 are Mortimer L. and Rosanna Schultz, husband and wife. The petitioners in dockets Nos. 1831–71, 1832–71, 1833–71, and 1834–71 are Roger Schultz, Patricia Schultz, Karen Schultz, and Michael Schultz (hereinafter children) all of whom are children of Mortimer and Rosanna and all of whom were minors during the years involved herein.

The legal residence of all petitioners at the time the petitions were filed was Plainfield, N.J.

Mortimer and Rosanna filed a joint cash basis income tax return for the taxable year 1962 with the director of internal revenue, Newark, N.J.

During the taxable year 1962, Mortimer was engaged in the real estate business, primarily in the organization and management of limited partnerships which were formed to acquire shopping centers and other commercial properties.

During the taxable year 1962, Mortimer was president of and a stockholder in Office Buildings of America, Inc. (hereinafter sometimes referred to as OBA). In addition, on December 31, 1962, he owned both First Jersey Servicing Co., a sole proprietorship (hereinafter proprietorship), and substantially all of the issued and outstanding capital stock of First Jersey Securities Corp. (hereinafter sometimes called FJS).

During 1962, the proprietorship was engaged in the business of providing management services to the limited partnerships referred to hereinabove.

On December 31, 1962, OBA issued a check payable to Rosanna, as nominee for Mortimer, in the amount of $270,500. At the same time, Mortimer issued a check to OBA in the amount of $270,422.87 which was credited on the OBA books against loans due to OBA from him. Through arrangements made with the bank by the controller of OBA, the two checks were cleared simultaneously in accordance with the agreement of the parties.

The $270,500 payment to Mortimer was part of the consideration in a transaction wherein OBA purchased from Mortimer all of his stock in FJS and, simultaneously, FJS purchased the assets of Mortimer's proprietorship, including the management contracts. The simultaneous purchases were duly and timely approved by appropriate action of the board of directors and stockholders of OBA and FJS.

It was at all times the intent of Mortimer, OBA, and FJS that the purchases would be consummated through the above-described exchange of checks in order to accomplish a reduction in Mortimer's indebtedness to OBA.

The total sales price for the FJS stock was $714,800. The consideration paid by OBA for such stock was $214,000 in cash (which was immediately applied as above described in reduction of Mortimer's indebtedness) plus installment notes in the total amount of $500,800.

The total sales price of the proprietorship was $235,000. The consideration paid by FJS was $56,500 in cash (which was immediately applied as above described in reduction of Mortimer's indebtedness) plus installment notes in the total amount of $178,500.

Respondent determined that Mortimer's cost basis for the FJS stock was $1,000. This determination was not disputed by petitioner.

A dispute developed several months after the sale of the FJS stock was effected which led to the filing of a petition in bankruptcy for OBA. The corporation was adjudicated a bankrupt on September 23, 1963.

Some of the notes issued by OBA and FJS were paid, all were subsequently canceled, and, for purposes of computing Mortimer's capital gain on both sales, were determined by the respondent to have no fair market value as of December 31, 1962. This determination was not disputed by petitioner.

Subsequent to the bankruptcy, the court ordered Mortimer to repay the $270,500 paid by OBA to Rosanna, less a credit of $50,945.48. The credit represented the book value of the FJS stock transferred by Mortimer to OBA on December 31, 1962, which was already in the possession of the trustee in bankruptcy.

Petitioners filed their joint Federal income tax return for the taxable year 1962 on October 15, 1963. This return does not disclose any taxable income realized from petitioner's sale of the FJS stock to OBA on December 31, 1962.

The sale of the proprietorship, First Jersey Servicing Co., was reported on Schedule D of petitioners' 1962 return and is not an issue herein.

OBA issued checks payable to Mortimer on May 3, 1962, and May 7, 1962, in the respective amounts of $5,000 and $13,575. The proceeds were used by Mortimer for personal business or investment purposes. The two checks were not reported as income in petitioners' 1962 income tax return.

ULTIMATE FINDINGS

Mortimer realized long-term capital gain, returnable in the taxable year 1962, in the amount of $213,000 from the sale of stock in FJS to OBA on December 31, 1962.

The $18,575 received by Mortimer from OBA in May of 1962 is taxable income which was not reported in the petitioners' 1962 income tax return.

OPINION

*Issue 1. Taxability of Sales Proceeds in 1962*

Respondent determined that petitioners realized long-term capital gain during the taxable year 1962 in the amount of $213,000 from the sale of stock of First Jersey Securities Corp. (FJS) on December 31, 1962. It is respondent's position that the gain on the sale of the stock is returnable in the year 1962 despite the fact that Mortimer was required by the order of a bankruptcy court to restore part of the con-

sideration in a subsequent year. Petitioner, in opposition, contends that the sale involved was only a "paper entry" and that the transaction actually never occurred. The facts do not support petitioner's position.

In the case of a cash basis taxpayer, section 451 of the 1954 Code [2] provides that the amount of any item of gross income shall be returnable in the taxable year in which it was received. With certain exceptions not applicable here, the statutory scheme clearly requires that taxable income be computed and taxed on an annual basis. Thus, income and expenses properly included in a taxable year are not affected by events which take place in a subsequent accounting period. The Supreme Court stated in *Healy* v. *Commissioner*, 345 U.S. 278, 284–285 (1953) that:

It would be disruptive of an orderly collection of the revenue to rule that the accounting must be done over again to reflect events occurring after the year for which the accounting is made, and would violate the spirit of the annual accounting system. This basic principle cannot be changed simply because it is of advantage to a taxpayer or to the Government in a particular case that a different rule be followed.

In applying section 451, *supra*, to the circumstances herein, we are not and petitioners were not at liberty to look beyond the facts as they stood at the end of the taxable year 1962. *Security Mills Co.* v. *Commissioner*, 321 U.S. 281 (1944); *Maurice P. O'Meara*, 8 T.C. 622, 634 (1947).

The principle of annual accounting periods is coordinate with the doctrine that the obligation to include an item in gross income may be based upon its momentary receipt within the taxable period, and subsequent events do not affect the year of inclusion as income. Thus, an item may be income at the end of the taxable year though subject to a claim and possible obligation to return it or restore its equivalent in a subsequent taxable period. *Blum* v. *Helvering*, 74 F. 2d 482 (C.A. D.C. 1934), certiorari denied 295 U.S. 732 (1935); *Anderson* v. *Bowers*, 77 F. Supp. 980 (E.D. S.C. 1948), affd. 170 F. 2d 676 (C.A. 4, 1948), rehearing denied 209 F. 2d 510 (C.A. 4, 1949), certiorari denied 337 U.S. 918 (1949). Even in a situation where the possibility of an eventual repayment exists at the close of the year of sale, the gain is properly includable in income for the taxable year unless the repayment was effected during that year. In discussing the claim-of-right doctrine and the broad sweep of "gross income," in *James* v. *United States*, 366 U.S. 213 (1961), the Supreme Court stated at pages 219–220:

---

[2] SEC. 451. GENERAL RULE FOR TAXABLE YEAR OF INCLUSION.

(a) GENERAL RULE.—The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period.

When a taxpayer acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition, "he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." *North American Oil* v. *Burnet, supra,* at p. 424. In such case, the taxpayer has "actual command over the property taxed—the actual benefit for which the tax is paid," *Corliss* v. *Bowers, supra.* * * * When a law-abiding taxpayer mistakenly receives income in one year, which receipt is assailed and found to be invalid in a subsequent year, the taxpayer must nonetheless report the amount as "gross income" in the year received. *United States* v. *Lewis, supra; Healy* v. *Commissioner, supra.*

To the same effect, see *Safety Tube Corporation,* 8 T.C. 757, 765 (1947), affd. 168 F. 2d 787 (C.A. 6, 1948); *Marquardt Corporation,* 39 T.C. 443, 455 (1962).

The record shows that on December 31, 1962, Rosanna Schultz and her children, acting as agents for Mortimer, sold his holdings in the stock of FJS to Office Buildings of America, Inc. (OBA), of which he was president. Contemporaneously and as an integral part of the same transaction, Mortimer sold his sole proprietorship interest and assets in First Jersey Servicing Co. to FJS. The consideration for both sales ($270,500) consisting of cash and notes, was received by Mortimer on December 31, 1962. In accordance with the agreement between Mortimer and OBA, the cash ($56,500) paid to Mortimer was returned to OBA which applied Mortimer's payment ($270,422.87) to the reduction of outstanding indebtedness due from him. All formalities of the sale were completed during the taxable year 1962, including the transfer of both title and possession of the properties to the respective buyers and the delivery of the agreed consideration to Mortimer. OBA's check was honored immediately upon presentation to the bank and no express or implied conditions precedent to passing title existed at the time of settlement. The simultaneous purchases were duly approved by the board and stockholders of OBA and FJS. Neither Mortimer nor OBA had any inkling on December 31, 1962, that the dual transactions would be challenged in a subsequent year. Indeed, it was several months after the close of the taxable year 1962 before any dispute developed, which led to the filing of a petition in bankruptcy for OBA. It is stipulated that the parties intended that a completed sale be effected on December 31, 1962. There was a closed transaction on that date; and even if the exchange of checks is not viewed as payment in cash, but as payment effected through setoff of indebtedness, the result is the same.

We find no merit in petitioners' contention that the sale of the FJS stock was properly omitted from their joint return for the taxable year 1962, which they filed on October 15, 1963, because prior to the due date

for filing their return, the District Court which had jurisdiction over the bankruptcy proceedings of OBA ordered Mortimer to repay the $270,500 to OBA, less a credit of $50,945.48; and that this order had the effect of nullifying the 1962 sale *ab initio*. Petitioners, who have the burden of proof, have not introduced any documents pertaining to the bankruptcy proceedings, and hence we do not know the precise terms of the order. Moreover, even if the court had declared the transaction void *ab initio*, Mortimer had treated the sales proceeds as his own in 1962 under an asserted claim that it was his absolutely, and not contingently, and the fact that his title to it was later challenged and that part of the money was later recovered from him does not prevent such money for tax purposes from being taxable income to him in that year.

Likewise we reject petitioners' contention that the transaction under review did not constitute a completed sale in 1962 because OBA did not have $214,000 in cash available on December 31, 1962, in order to pay for the FJS stock. Petitioners did not introduce any books or records with respect to the transaction. The only evidence adduced to support their argument is the balance sheet appearing in the income tax return of OBA which shows a cash balance of about $62,000 as of the close of business on December 31, 1962. However, no affirmative evidence was presented to demonstrate that insufficient funds existed at the time the check cleared to clear a check in the amount of $270,-422.87, and absent such evidence, we believe that the cash ($62,000) shown on the balance sheet of OBA was the balance after the check had been paid. It is well settled that the transfer of property (viz, securities), in satisfaction of a debt, as here, is to be treated no differently than as if the debtor issued his check to the creditor in payment of the debt and then received the creditor's check in payment for the property. *E. F. Simms*, 28 B.T.A. 988, 1030 (1933).

Although neither party has directed our attention to the recent case, *Wilbur Buff*, 58 T.C. 224 (1972), on appeal (C.A. 2, Dec. 11, 1972), which held that funds embezzled by the taxpayer in the taxable year did not constitute gain or income to him since in the same taxable year there was, by agreement of the parties, an arrangement for repayment of the money, we have considered such decision in the light of the question presented herein and find it clearly distinguishable on its facts.

In view of the foregoing, we are convinced that petitioners received the full purchase price for the properties involved in the sale during their taxable year 1962 and the amount thereof must be included in their income for that year in computing their capital gain. *Consolidated Gas & Equipment Co. of America*, 35 T.C. 675, 684 (1961).

566

Restoration of part of the consideration in 1963 was for taxation purposes a new transaction which has no effect upon their tax liability for 1962. *Karl Hope*, 55 T.C. 1020, 1033 (1971). The annual accounting concept requires that any adjustment must come in the form of a deduction in the year of repayment. *Eugene H. Walet, Jr.*, 31 T.C. 461 (1958), affirmed per curiam 272 F. 2d 694 (C.A. 5, 1959). The question whether petitioners are so entitled is not at issue here since the year 1963 is not before us.

*Issue 2. Checks Totaling $18,575 Received by Petitioners in 1962*

Respondent determined that two checks in the respective amounts of $5,000 and $13,575 were received by Mortimer from OBA in May 1962 and used for his personal business or investment purposes. Respondent increased petitioners' taxable income in the amount of $18,575 for 1962. Petitioners acknowledged the receipt thereof, but maintain that these two items were reported as income on their 1962 return. However, examination of this return which is in evidence discloses no such items. Petitioners aver that their records which would have reflected the inclusion of these two items in their income and on their 1962 return have been lost by the receiver in bankruptcy for OBA. Respondent's determination is presumptively correct and under the circumstances we must conclude that petitioners have failed to show error therein. Accordingly, respondent is sustained on this issue.

*Decisions will be entered under Rule 50.*