JOHN G. PAHL AND BEVERLEY B. PAHL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9563–75. Filed November 22, 1976.

*Robert E. Tout,* for the petitioners.
*Warren N. Nemiroff,* for the respondent.

OPINION

FEATHERSTON, *Judge:* Respondent determined a deficiency of $35,191 in petitioners' Federal income tax for 1972. The issue to be decided is whether petitioners John G. Pahl and Beverley B. Pahl are entitled to a deduction in 1972 for the repayment of that portion of the compensation which petitioner John G. Pahl received in 1969 and 1970 from a corporation he controlled and for which the corporation was not allowed deductions in those years under section 162(a).[1]

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise indicated.

All the facts are stipulated.

At the time the petition in this proceeding was filed, petitioners were legal residents of Stockton, Calif. For 1972, petitioners, who are husband and wife, filed a joint Federal income tax return. For convenience, John G. Pahl will be referred to as petitioner.

During 1969, 1970, and 1972, petitioner was president of K-P-F Electric Co., Inc. (hereinafter K-P-F) ard had voting control over 100 percent of its stock. During 1969 and 1970, petitioner received compensation from K-P-F in the respective amounts of $187,024.89 and $171,908.44.

On December 14, 1970, petitioner and K-P-F entered into a contract whereby petitioner was employed as general manager and sales manager. For his services, he was to be paid a fixed salary of $2,085 per month and an additional sum as incentive compensation. Also, contributions to a retirement plan were to be made on his behalf. The incentive compensation was to be equal to 7½ percent of K-P-F's "quarterly net sales," payable 60 days after the close of each quarter. It was agreed, however, that the incentive compensation was "to be limited * * * to such maximum amount * * * as is not finally disallowed for Federal Income Tax purposes as a deductible Company expense in a final determination reached with Internal Revenue Service." Paragraph 5 of the agreement further provided:

5. The parties acknowledge that during the course of this employment, the Employee may receive the following monies from the Company, by way of compensation, or as independent commercial receipts:

(a) Incentive compensation of seven and one-half percent (7½%) of quarterly net sales,

(b) Expense reimbursements,

(c) Rentals on property independently owned by Employee,

(d) Interest on loans to Company by Employee,

(e) Miscellaneous (other than dividends, Base Salary of $2,085.00 monthly, and contributions to Salaried Employees Retirement Plan).

And the parties further acknowledge the possibility that some of these payments from the Company to the Employee may be disallowed by the U.S. Internal Revenue Service as deductible Company expenses for Federal Income Tax purposes.

And the parties specifically agree that as to any of the above payments disallowed in whole or in part as deductible expenses for Federal Income Tax purposes the Employee shall mandatorily reimburse the Company to the full extent of the disallowance, within thirty (30) days of notice to him by the Board of Directors of such disallowance, which notice the Board shall

give and enforce promptly upon final disallowance by the District Director of Internal Revenue in a final determination reached with Internal Revenue Service.

The parties further agree in consideration of this contract, and in view of the fact that the identical work and compensation arrangements have been in effect between the parties since January 1, 1969, that the provisions of this contract requiring the repayment by Employee to the Company of any receipts by him disallowed by the Internal Revenue Service as a deductible Company expense, shall be effective as of January 1, 1969, as to any receipts and disallowances after January 1, 1969.

As a result of an examination of K-P-F's 1969 and 1970 income tax returns, which began in December 1971 and concluded in April 1972, K-P-F and the Internal Revenue Service agreed that, of the total amounts received as compensation by petitioner in 1969 and 1970, the amounts of $87,024.89 in 1969 and $71,908.44 in 1970, a total of $158,933.33 for the 2 years, were unreasonable compensation. During 1972, petitioners repaid $158.933.33 to K-P-F and in their joint return for that year claimed an ordinary loss deduction in that amount.

In his statutory notice of deficiency, respondent disallowed $149,277 of the claimed deduction for 1972. Respondent allowed deductions for two salary payments totaling $2,085, made on or after December 14, 1970, and incentive commissions totaling $7,570.93 attributed to the days in 1970 after December 13.[2]

---

[2] The notice of deficiency computed the amount disallowed as follows:

| | |
|---|---:|
| Compensation received in 1969 | $187,024.89 |
| Compensation received in 1970 | 171,908.44 |
| Total compensation, 1969 and 1970 | 358,933.33 |
| Less: Amount considered to be reasonable compensation, $100,000 per year | (200,000.00) |
| Total excessive compensation, and amount claimed as a loss | 158,933.33 |
| Deduction allowable, limited to amounts received subsequent to Dec. 13, 1970: | |
| Commissions, 4th quarter, 1970 ..... $38,695.88 | |
| 22 days, Dec. 14-Dec. 31, 1970 | |
| 92 days, Oct. 1-Dec. 31, 1970 | |
| $38,695.88 x 22/92 = commissions after Dec. 13, 1970 | (7,570.93) |
| Add: Two salary payments after Dec. 13, 1970 | (2,085.00) |
| Portion of deduction disallowed— increase in income | 149,277.00 |

It will be noted that the disallowed amount is a rounded figure. The record contains no explanation of why the period in 1970 after Dec. 13 was treated as having 22 days.

The respective amounts of $187,024.89 and $171,908.44 which petitioner received from K-P-F in 1969 and 1970 were not subject to any restrictions as to their use or disposition. The portion of these amounts not allowable as deductions to K-P-F was not determined by the Internal Revenue Service until 1972. It is clear, therefore, under the claim-of-right doctrine enunciated in *North American Oil Consolidated v. Burnet,* 286 U.S. 417, 424 (1932), confirmed and followed in *United States v. Lewis,* 340 U.S. 590 (1951), and the principle of annual accounting periods, *Burnet v. Sanford & Brooks Co.,* 282 U.S. 359 (1931), the amounts received in 1969 and 1970 were taxable in those years.[3] Restoration of a part of these sums in 1972 was for tax purposes a new transaction which has no effect on their taxability in 1969 and 1970. *Mortimer L. Schultz,* 59 T.C. 559, 566 (1973); *Karl Hope,* 55 T.C. 1020, 1033 (1971), affd. 471 F.2d 738 (3d Cir. 1973), cert. denied 414 U.S. 824 (1973).

As to the deductibility of the 1972 restoration, a distinction must be made between the amounts petitioner received prior to the execution of the contract on December 14, 1970, and the amounts received after that date. At the time petitioner received the pre-December 14, 1970, payments (totaling $318,248.01), he had no obligation to restore them regardless of whether K-P-F was allowed deductions for them. Rather petitioner had an unrestricted right to his salary payments for 1969 and 1970 received prior to December 14, 1970, and to the incentive compensation for all of 1969 and the first three quarters of 1970 when they were received. This right was not

---

[3] In *Mortimer L. Schultz,* 59 T.C. 559, 563 (1973), this Court discussed how the claim-of-right doctrine and the principle of annual accounting periods work in harmonious combination as follows:

"The principle of annual accounting periods is coordinate with the doctrine that the obligation to include an item in gross income may be based upon its momentary receipt within the taxable period, and subsequent events do not affect the year of inclusion as income. Thus, an item may be income at the end of the taxable year though subject to a claim and possible obligation to return it or restore its equivalent in a subsequent taxable period. *Blum v. Helvering,* 74 F.2d 482 (C.A. D.C. 1934), certiorari denied 295 U.S. 732 (1935); *Anderson v. Bowers,* 77 F.Supp. 980 (E.D. S.C. 1948), affd. 170 F.2d 676 (C.A. 4, 1948), rehearing denied 209 F.2d 510 (C.A. 4, 1949), certiorari denied 337 U.S. 918 (1949). Even in a situation where the possibility of an eventual repayment exists at the close of the year of sale, the gain is properly includable in income for the taxable year unless the repayment was effected during that year. * * *"

qualified by any circumstances, terms, or conditions existing at the time of the receipt of those sums. His subsequent contingent voluntary agreement of December 14, 1970, required, in part, that petitioner reimburse his employer for any of the already-received amounts that were, at some future date, disallowed as income tax deductions to his employer. Such agreement, however, will not support a 1972 deduction for his repayments to K-P-F in that year of the excessive amounts totaling $318,248.01 received before December 14, 1970.

In *George L. Blanton,* 46 T.C. 527 (1966), affd. per curiam 379 F.2d 558 (5th Cir. 1967), the taxpayer repaid to his corporate employer the portion of his director's fees that had been determined by the Internal Revenue Service to be excessive. The repayment was made pursuant to a contract entered into a year after petitioner had received the salary. Rejecting a contention that section 1341(a)[4] supported the deduction, this Court said (p. 530):

It is irrelevant for present purposes to determine (1) whether petitioner was legally bound by the aforementioned contract to return one-half of the director's fees to the corporation or (2) whether such contract was entered into before or after the audit by the Internal Revenue Service was instituted. Under section 1341(a)(2), the requisite lack of an unrestricted right to an income item permitting deduction must arise out of the circumstances, terms, and conditions of the *original* payment of such item to the taxpayer and not out of circumstances, terms, and conditions imposed upon such payment by reason of some subsequent agreement between payor and payee. Cf. *United States v. Simon,* 281 F.2d 520 (C.A. 6, 1960); *Joseph P. Pike,* 44 T.C. 787, 799 (1965), on appeal (C.A. 6, Feb. 21, 1966). According to the circumstances, terms, and conditions of the original payments of director's fees to petitioner, petitioner was never obligated at any time to return any portion of said fees to the corporation. It was only after petitioner received the director's fees that he voluntarily entered into the

---

[4] SEC. 1341. COMPUTATION OF TAX WHERE TAXPAYER RESTORES SUBSTANTIAL AMOUNT HELD UNDER CLAIM OF RIGHT.

(a) GENERAL RULE.—If—

(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

(3) the amount of such deduction exceeds $3,000,

then the tax imposed by this chapter for the taxable year shall be the lesser of * * * [amounts reflected in alternative computations].

repayment contract which may or may not have been binding upon him. However, the fact that the contract may have been binding upon petitioner does not change the essentially voluntary nature of his decision to enter into it.

Since a restoration agreement voluntarily executed after an item has been received does not establish that the "taxpayer did not have an unrestricted right to such item" within the meaning of section 1341(a), that section will not support a 1972 section 165 loss deduction for the amounts repaid by petitioner. Cf. *United States v. Skelly Oil Co.*, 394 U.S. 678, 683 (1969).

In the light of the *Blanton* case, petitioner does not appear to press his 1972 deduction claim under section 1341(a) but argues that section 162(a) alone will support the deduction. This argument also lacks merit. In *United States v. Simon,* 281 F.2d 520 (6th Cir. 1960), involving a tax year prior to the enactment of section 1341, the court denied a deduction claimed under a restoration agreement signed after rental payments, subsequently reimbursed, had been received.

In the *Simon* case the taxpayer's partnership in 1941 leased property to a corporation owned and controlled by the partners under a lease calling for rent equal to 6 percent of gross sales. After the close of its fiscal year ended October 31, 1943, the corporation's board of directors in November 1943 exacted an agreement from the lessors to reimburse the corporation for any rent disallowed as a deduction for income tax purposes for the fiscal year November 1, 1942, to October 31, 1943. On January 31, 1944, respondent and the corporation's representatives agreed that rental payments in excess of 4¾ percent should be disallowed as excessive. On August 1, 1944, the lease was modified by its parties, retroactive to November 1, 1942, reducing the rent to 4¾ percent of gross sales and obligating the taxpayers to reimburse the corporation for any disallowed amounts. Rejecting the taxpayers' argument that their repayments in 1944 of the excessive rent for the corporation's fiscal year ended October 31, 1943, were deductible as ordinary and necessary business expenses or as a loss in the year of the repayment, the court said (281 F.2d at 526):

In the present case, when taxpayers received the rentals from their wholly owned corporation, they were under no legal or moral obligation to

pay them back. On the contrary, the written lease obligated the corporation to pay taxpayers the stipulated rentals. The payment to them was unconditional * * *. Taxpayers were then the sole and absolute owners of the funds so paid.

But taxpayers claim that in the following year, when they refunded the rentals to the corporation, they were under legal obligation to do so because of the provisions of the 1943 directors' resolution before quoted and the modification of lease agreement entered into in 1944. As previously pointed out, these agreements were made *after* the fiscal year in which the rentals had been unconditionally paid.

[3] Taxpayers were undoubtedly motivated in entering into the agreement with the corporation to reduce the lease rentals in order to eliminate any future controversy with the Commissioner over excessive rentals. We fail to see any business purpose in making the modification agreement retroactive so as to provide for refunding of rentals already paid in a prior tax year. The sole reason, in our judgment, was to obtain a tax advantage either for the corporation, or taxpayers or both. This is not sufficient to justify the deduction claimed as payment of an "obligation" within the sense of claim of right. We agree with the decisions previously discussed which hold that no "obligation" arises from a voluntary agreement to repay monies which the taxpayer would otherwise have an absolute and unconditional right to retain.

See also *Ernest H. Berger,* 37 T.C. 1026, 1031–1032 (1962) (salary payments). In a very real sense, the 1969 and 1970 compensation payments to petitioner in excess of reasonable amounts were disguised dividends and the restoration of previously received dividends will not support a deduction. *Crellin's Estate v. Commissioner,* 203 F.2d 812 (9th Cir. 1953), affg. 17 T.C. 781 (1951), cert. denied 346 U.S. 873 (1953). Thus, petitioner's repayments to K-P-F in 1972 of amounts received before December 14, 1970, are not deductible in that year but constitute capital contributions to the corporation which increase his basis in his stock.

However, with respect to repayment of the unreasonable compensation for the period after December 14, 1970, we think the rule of *Vincent E. Oswald,* 49 T.C. 645 (1968), controls. There this Court held that repayment in 1964 of the unreasonable part of an officer's salary for 1960 was deductible under section 162(a) where such repayment was required by a bylaw adopted by the payor corporation at the time of its incorporation in 1952. We stated as follows (49 T.C. at 648):

The bylaw clearly served a business purpose of Electric since it enabled Electric to recover the amount of the "unreasonable" salary which caused it

to lose the deduction. Obviously this recovery would help Electric to pay the resulting deficiency and would add to the funds of the corporation for all purposes. * * *

In the notice of deficiency, the Commissioner allowed deductions for reimbursement of two salary payments totaling $2,085, received after December 13, 1970, and incentive commissions of $7,570.93, attributed to the days in 1970 after December 13.[5] Under the employment contract signed on December 14, 1970, before the close of the fourth quarter of that year, petitioner's incentive compensation was limited to 7½ percent of the "quarterly net sales." No computation of such net sales for the last quarter in 1970 could be made until after the close of that quarter. Sales adjustments made after December 14, 1970, could have materially affected net sales for the quarter, and, consequently, K-P-F had no obligation to pay petitioner any commission on those sales prior to the execution of the employment contract. The employment contract contains nothing calling for a ratable apportionment of the net sales over the fourth quarter of 1970 in the manner in which the notice of deficiency computations were made. Therefore, petitioner is entitled to a deduction for the repayments made pursuant to the provisions of the employment contract for the full amount of the incentive compensation ($38,695.88) for the fourth quarter of 1970 as well as the salary ($2,085). *Vincent E. Oswald, supra* at 648.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

---

[5] See n. 2 on p. 288 of this opinion.

